UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| KARLA GAIL TINGLEY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 17-00297-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Karla Gail Tingley ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security disability insurance benefits. For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

## I.
## BACKGROUND

Plaintiff applied for disability insurance benefits on November 16, 2012, alleging disability beginning on December 6, 2010. See Administrative Record ("AR") 112-13. After those applications were denied, Plaintiff requested and

received a hearing before an administrative law judge ("ALJ"), who issued an unfavorable decision dated May 29, 2015, finding Plaintiff not disabled. See AR 13-29.

The ALJ concluded that Plaintiff had severe impairments of lumbar spondylosis, anxiety, and depression, but found that those impairments did not meet or medically equal a listed impairment. See AR 18-21. The ALJ found that Plaintiff has a residual functional capacity ("RFC") to perform light work, except she could sit for no more than two hours at a time, stand for no more than two hours at a time, and walk for no more than two hours at a time; could frequently operate foot controls; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; must avoid all exposure to unprotected heights and more than occasional exposure to moving mechanical parts; and could understand, remember, and carry out instructions for simple, routine tasks and use judgment to make simple work-related decisions. AR 21-27. The ALJ found that Plaintiff was unable to perform any of her past relevant work. AR 27. Relying upon the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy—specifically, office helper, cashier, and sales attendant. AR 28.

The Appeals Council denied review of the ALJ's decision, and it became final. See AR 1. This action followed.

## II.

## DISCUSSION

Plaintiff argues that the ALJ improperly discounted the opinions of her treating physicians and treating chiropractor, failed to acknowledge that Plaintiff presented a borderline age situation, and rejected Plaintiff's symptom testimony without acknowledging her work history and attempt to return to

work. See Joint Stipulation (Dkt. 17) ("JS") at 8-9.

**A.    Medical Opinion Evidence**

   **1.    Facts**

Dr. Richard Monticciolo saw Plaintiff twice in 2014. See AR 892. The record contains no treatment notes or records from those two visits. On March 24, 2015, Dr. Monticciolo opined that Plaintiff could sit for no more than 15 minutes at a time, stand for no more than 15 minutes at a time, sit for less than two hours total, and stand or walk for less than two hours total in an eight-hour work day, and would need to miss three or more days a month due to back pain, rheumatoid arthritis, and spondylosis. AR 892-95.

Dr. John Mullaney saw Plaintiff three times in 2011 and 2012. See AR 744-46. In January 2012, Dr. Mullaney opined that due to her spondylosis, Plaintiff was unable to "bend without pain, lift or stand for long period[s]," and could not sit for more than two hours, stand or walk for more than two hours, or lift more than 20 pounds. AR 757. Dr. Mullaney's treatment notes from January 2012 state that Plaintiff's visit was to follow up on hypertension and reflect that she was alert, in no acute distress, and appeared well. AR 753-54.

Dr. James T. Platto, a chiropractor, began treating Plaintiff in 2005. See AR 512. In November 2012, he completed a one-page "Functional Capacity Questionnaire." See AR 779. He stated that Plaintiff could not stand or walk for more than four hours or sit for more than four hours of an eight hour day; could lift up to 10 pounds frequently, 20 pounds occasionally, and 50 pounds never; could occasionally stoop and rarely crouch; and would miss more than four days per month of work.[1] Id. He checked the boxes for "positive straight

---

[1] Dr. Platto also opined in a two-paragraph April 2011 letter that Plaintiff's back condition impacted her ability to carry over 10 pounds, climb stairs, and carry out daily activities. See AR 512.

3

leg raising test" and "muscle weakness." Id.

Dr. Jeffrey M. Lundeen examined Plaintiff and reviewed her medical records before issuing his July 2011 opinion. AR 697-98. He opined that Plaintiff should not sit for more than two hours at a time; should not stand for more than two hours at a time; should not walk for more than one hour at a time; should not lift more than 20-25 pounds; should not push or pull more than 20-25 pounds, and should bend and stoop only occasionally. AR 697.

Maya Desai, Doctor of Medicine and state-agency doctor, opined in May 2012 that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and stand or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day, with occasional stooping and climbing of ramps and stairs, and no climbing of ladders, ropes and scaffolds. AR 86-88. Dr. Desai wrote, "MER reveals a h/o chronic low back pain with a Grade 1 L5-S1 spondylolisthesis w/o any evidence of nerve root compression and mild multilevel degenerative changes. The clmt has been treated with chiropractic treatments and ibuprofen. Longitudinal exams reveal normal gait and normal neurological exams. The clmt's current evaluations at CHC do not reveal any ongoing specific treatment for low back pain." AR 121-22.

In February 2014, Angelina Jacobs, Doctor of Medicine and state-agency doctor, mostly concurred with Dr. Desai's assessment, but she concluded that Plaintiff could climb ramps and stairs frequently, climb ladders, ropes, and scaffolds occasionally, and stoop and crawl occasionally. AR 121.

**2.    Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v.

Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).[2] A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citation omitted); see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).

"Acceptable medical sources" under the Social Security regulations include only licensed physicians, psychologists, optometrists, podiatrists, and speech pathologists. See 20 C.F.R. § 404.1513(a). Chiropractors are treated as "other sources," see id. § 404.1513(d)(1), and an ALJ may reject opinions from other sources by giving "reasons germane to each witness for doing so." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

### 3. Analysis

Plaintiff incorrectly argues that the ALJ should have given clear and convincing reasons to reject the opinions at issue. See JS at 15. But Dr. Monticciolo's and Dr. Mullaney's opinions were contradicted by other medical opinions—specifically, by Dr. Lundeen and two state-agency doctors—and thus the ALJ needed only give specific and legitimate reasons, supported by substantial evidence, for rejecting these two opinions.[3] See Garrison, 759 F.3d

---

[2] The Court applies the version of 20 C.F.R. § 404.1527 that was in effect at the time of the ALJ's May 2015 decision.

[3] Plaintiff argues that the ALJ should not have given greater weight to

5

at 1012. As for Dr. Platto, a chiropractor, the ALJ needed to give germane reasons for rejecting his opinion.

The ALJ noted that Dr. Monticciolo's opinion was based on two 2014 office visits. The ALJ also noted that Dr. Monticciolo's assessed limitations exceeded those reported by Plaintiff, were inconsistent with her reported activities, and were not supported by objective medical evidence such as physical examination findings or diagnostic testing. AR 27. Each of these was a specific and legitimate reason for rejecting Dr. Monticciolo's opinion supported by substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2)(i) ("Generally, . . . the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."), 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."), 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Plaintiff's 2015 hearing testimony contradicted Dr. Monticciolo's conclusion that she could not sit or stand for more than 15 minutes at a time. See, e.g., AR 63 (testifying that she could drive for 40 minutes and sit for an hour). In October 2013, a physical examination showed normal range of motion of the spine, no spinal tenderness, and a negative straight leg raise test. See AR 831. Plaintiff points to no objective medical evidence to support Dr. Monticciolo's conclusions. See JS at 19-20.

---

Dr. Lundeen's opinion because Dr. Lundeen examined Plaintiff in July 2011. JS at 16-17. As the ALJ noted, Dr. Lundeen examined Plaintiff; he examined her in the relevant period; he was a specialist; he reviewed her entire medical record; and his opinion was supported by objective medical evidence. See AR 26.

Similarly, the ALJ noted that Dr. Mullaney examined Plaintiff three times before issuing his opinion, at which times she appeared well and in no acute distress and did not complain of low back pain. See AR 27. The ALJ also noted that Dr. Mullaney made no physical findings and that his opinion was not supported by objective medical evidence. See id. Each of these was a specific and legitimate reason supported by substantial evidence. See 20 C.F.R. §§ 404.1527(c)(2)(i), 404.1527(c)(3), 404.1527(c)(4). Plaintiff's main counter-argument is that the ALJ gave greater weight to opinions of physicians that examined Plaintiff fewer than three times. See JS at 20. But the ALJ gave other legitimate reasons for rejecting Dr. Mullaney's opinion. Dr. Mullaney's notes from Plaintiff's three office visits give no indication of why he imposed the two-hour limitations on sitting and standing or walking: the only mention of back pain in his three previous treatment notes is from the same date of his opinion, saying that she "needs an update on her disability from her low back pain." AR 753. Plaintiff cites to no objective evidence supporting Dr. Mullaney's decision, but claims that because this was a case without documented musculoskeletal findings, he probably "chose not to subject her to potentially painful testing at every visit." JS at 21. That Dr. Mullaney chose not to document even a basic physical examination before giving his opinion supports rather than undermines the ALJ's conclusion. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, . . . the more weight we will give that medical opinion.").

Finally, the ALJ noted that Dr. Platto had not treated Plaintiff since October 2, 2012, that medical evidence from subsequent treating sources showed negative straight leg raising and intact motor functioning, and that there was no objective medical evidence to support Dr. Platto's opinion that Plaintiff would be absent from work more than four days a month. See AR 26.

Each of these was a germane reason to discount Dr. Platto's opinion. See, e.g., AR 663 (March 2012 normal motor function), 831 (October 2013 negative straight leg raising).

**B.  Plaintiff's Age**

**1.  Law**

A claimant makes a prima facie showing of disability where, as here, the claimant has established that she suffers from a severe impairment that prevents her from doing past work. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). Once the claimant makes such a showing, the Commissioner bears the burden of "show[ing] that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. (citation omitted). The Commissioner can meet this burden in one of two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines ['the grids'] at 20 C.F.R. pt. 404, subpt. P, app. 2." Id. at 1101 (emphasis omitted).

The grids are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). For purposes of applying the grids, there are three age categories: younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). The regulation also provides:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will

consider whether to use the older age category after evaluating the
overall impact of all the factors of your case.

Id. § 404.1563(b) (emphasis added). "It is clear from the text of this regulation that an ALJ is not required to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010).

### 2. Analysis

At the time of the ALJ's decision, Plaintiff was several months shy of her 55th birthday. See AR 28. Plaintiff argues that the ALJ relied on the grids in making his disability determination, and that she presents a "borderline" situation. See JS at 30. The Court notes that the ALJ did not rely on the grids here. Even setting that aside, Plaintiff's argument fails. She asks the Court to remand this case because the ALJ did not "acknowledg[e] that she [sic] had the discretion to use the older age category." JS at 32. In Lockwood v. Comm'r Soc. Sec. Admin, the Ninth Circuit rejected this argument. See Lockwood, 616 F.3d at 1071 (citing with approval Bowie v. Comm'r, 539 F.3d 395, 399-401 (6th Cir. 2008), for the holding that § 404.1563(b) "does not impose on ALJs a per se procedural requirement to address borderline age categorization in every borderline case").

Plaintiff points to the "distinguishing fact in Lockwood . . . that the ALJ had acknowledged that she had the discretion to use the older age category." JS at 32. This is not a distinguishing fact, because the ALJ did here exactly what the ALJ did in Lockwood:

> The ALJ mentioned in her decision Lockwood's date of birth and found that Lockwood was 54 years old and, thus, a person closely approaching advanced age on the date of the ALJ's decision. Clearly the ALJ was aware that Lockwood was just shy

9

of her 55th birthday, at which point she would become a person of advanced age. The ALJ also cited to 20 C.F.R. § 404.1563, which prohibited her from applying the age categories mechanically in a borderline situation. Thus, the ALJ's decision shows that the ALJ knew she had discretion "to use the older age category after evaluating the overall impact of all the factors of [Lockwood's] case."

Lockwood, 616 F.3d at 1071-72. Here, like the ALJ in Lockwood, the ALJ (1) noted Plaintiff's date of birth, (2) described her as an "individual closely approaching advanced age," and (3) cited 20 C.F.R. § 404.1563. See AR 27. Thus, the ALJ's decision shows that the ALJ knew he had discretion to use the older age category.

### C. Plaintiff's Work History

#### 1. Law

In assessing a claimant's testimony about subjective pain or symptoms, an ALJ engages in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. Once the claimant presents this evidence, an ALJ may not reject subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and

what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1283-84,1284 n.8 (9th Cir. 1996); see also 20 C.F.R. § 404.1529(c)(3).

**2. Analysis**

Plaintiff argues that the ALJ erroneously discounted Plaintiff's subjective symptom testimony because the ALJ failed to consider her "incredibly strong work record." JS at 36. Plaintiff's only evidence that the ALJ did not consider her work record is that the ALJ did not discuss it in the opinion. See JS at 36. She cites no authority that requires the ALJ to discuss, as opposed to "consider," a claimant's work history in assessing symptom testimony. Here, the ALJ inquired into Plaintiff's work history at the hearing and learned that Plaintiff was a business license clerk from 1996 to 2000, a cook from 2002 to 2004, at which point she left due to a fractured vertebrae, and a bus driver from 2005 to 2010. See AR 39-41; JS at 36. Based on the record, there is no reason to believe that the ALJ did not consider Plaintiff's prior work history in analyzing her subjective symptom testimony. See Rocha v. Comm'r of Soc. Sec., No. 15-01298, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016) ("[W]hile work history is a factor that the ALJ considers in determining credibility, Plaintiff does not cite to, nor is the Court aware of any requirement that an ALJ must discuss the work history in the credibility section of the ALJ's decision. Further, as discussed above, during the December 2013 hearing, the ALJ specifically inquired into Plaintiff's prior good work history.").

Furthermore, the ALJ gave clear and convincing reasons for discounting

11

Plaintiff's subjective symptom testimony—much of which the ALJ credited, given the RFC limitations. At the hearing, Plaintiff testified that she had to lie down for one to two hours every two or three hours, that her legs went numb if she sat for longer than forty minutes to an hour, that she had constant, throbbing pain in her back, and that she could not do laundry, clean the house, vacuum, or bend over to make the bed or put laundry in a laundry machine. See AR 50-51, 55-59, 63-64.

The ALJ provided clear and convincing reasons for discounting Plaintiff's testimony about her physical symptoms. The ALJ extensively reviewed Plaintiff's medical records and concluded that they did not support her symptom testimony. AR 22-26. Several months before Plaintiff's alleged disability onset date, Plaintiff reported that she could perform all routine activities of daily living without assistance, stated that her back pain went away with pain medication, and denied any numbness or tingling in her lower extremities. AR 726. In December 2010, Plaintiff's doctor made no changes to these portions of the opinion after reviewing x-rays of the lumbar spine. AR 659-61. While Plaintiff reported leg numbness and buckling on several occasions in 2011 and 2012, she appeared in no acute distress on physical examination. AR 783-84, 664-65, 669-70, 662-63. In May 2012, she reported a pain level of zero (with the range of pain for the previous week being zero to seven out of ten) and that she performed household chores independently. AR 775-78. In October 2013, she demonstrated a normal range of motion of the spine. AR 831. In February 2015, she did not complain of back pain. AR 890-91. These records contradict Plaintiff's testimony about her more extreme physical limitations.

///
///
///

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: April 19, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge